February 6, 1911.

————o————

### 5194.

### (Court of Appeal, Parish of Orleans).

## SUCCESSION OF ANDERSON SMITH.

*Issues of fact only are involved herein.*

Appeal from the Civil District Court, Division "C."

McCloskey & Benedict, for plaintiff and appellee.

N. E. Humphreys, for defendant and appellant.

DUFOUR, J.—Anderson Smith, a colored man, died in February, 1908, and in September his succession was opened by his widow who asked to be confirmed as

natural tutrix of their minor children.

In November, 1908, Emanuel Smith, brother of the deceased, caused to be probated an olographic will attested by two witnesses who signed the instrument.

The widow attacked the will on the ground that it was a forgery and from a judgment sustaining her attack, this appeal has been taken.

The cause comes before us with the following reasons for judgment assigned by the district judge:

"On the trial of the case I was much impressed with the improbability of the statement of the two Hadley brothers, I do not think that a man sick almost to the point of death and necessarily feeble from a long time preceding his death, could possibly have written a will, the length of the one in question, without showing some tremulous effect in his writing. The evidence of the two brothers differs as to the exact method and position of the alleged testator at the time of its writing but either one would enhance the probability of trembling penmanship, when in fact there is none. Expert evidence pronounces the will a forgery. Emanuel Smith claims he reached the room where the will was drawn shortly after it was made, and that it was given to him, but, with this document in his possession, he goes before a notary and accepts a power of attorney from the surviving widow to administer the whole property when, by the terms of the will, he was the legatee of one lot and his mother of another. The succession of Smith was opened, the surviving widow was qualified as tutrix in September and he withholds the alleged will until November, when he files it for probate, and that after a dispute with the widow and his refusal to sign a bond. The case approximates very closely the facts and the law in the Succession of M. C. Gaines, 38 An.

123, judgment setting aside the will."

In matters of this nature, involving good faith, the conclusion of the trial judge who saw and heard the witnesses are entitled to great weight, and they will not be set aside unless manifestly erroneous.

In the present instance, our examination of the record confirms the opinion of the district judge.

The handwriting of the will which covers a full leaf from a good sized blank book is firmer and steadier by far than would be expected from one who had been very ill for some time.

The paper is clean cut and without rough edges, which it could not be if torn out of a book, as stated by the Hadleys, witnesses to the will.

At the trial, counsel dictated the will to Emanuel Smith, and the dictated will, though a peculiar co-incidence, shows the same errors in spelling as are manifested by the will itself. This occurs in several instances, notably in such words as "corlect" for "collect," "renain" for "remain" and "cornor" for "corner."

A similarity of errors in two or three words may be quite accidental, but its recurrence in eight or nine points almost unmistakably to a common origin for both instruments.

The handwriting may easily be disguised by enlargement, but no two persons ever made precisely the same errors of spelling in a given number of words.

After comparing the signature of the will with documents admittedly written by Anderson Smith, the expert says:

"There is not the slightest question of doubt in my mind that the man who wrote 'Anderson Smith' on the two notes and on the act of mortgage did not write the will * * * There is a very marked dissimilarity, * * * I compared these three docu-

ments with the will itself, and came to the conclusion that it would have been impossible for the man who wrote the receipt and the two notes to have written the will.''

Wilson Hadley says that he did not see Anderson Smith sign the will, and neither he nor his brother had any, but a vague recollection of its contents.

Mrs. Smith says that she was steadily at home and that she did not see either Hadley there at the time claimed.

It is also testified by her and another witness that the deceased said nothing about making a will.

Further reference to the record would be tedious and unnecessary.

We rise from its perusal with the conviction that it warrants the judgment.

No iron-clad rule of law governs uniformly in cases of this character and every case must stand on the particular facts surrounding it.

Judgment affirmed.

February 6, 1911.

————o————

5144.

(Court of Appeal, Parish of Orleans.)